UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| HILLSMAN MODULAR MOLDING, INC.<br><br>*Plaintiff*,<br><br>v.<br><br>EMERSON ELECTRIC CO, GLENN BIRDWELL, INDUSTRIAL DEVELOPMENT BOARD OF WHITE COUNTY, TENNESSEE, KRAFT HEINZ FOODS COMPANY LLC, LARRY FRASIER, and STANLEY BLACK & DECKER, INC.<br><br>*Defendants*. | Case No. |

# COMPLAINT

Comes now the Plaintiff, Hillsman Modular Molding, Inc., by and through its undersigned counsel, and files this *Complaint* against the Defendants herein and states as follows:

## BACKGROUND

1. This Complaint arises from an environmental spill of toxic waste at 189 Churchill Dr., Sparta, TN 38583 (the "Site"). The Site was formerly owned and operated by several of the Defendants. P.R. Mallory and Co. Inc. and Emerson Electric Co operated at the Site from 1968 – 2005. During that time, the companies were known to use tetrachloroethene, trichloroethene and 1, 1, 1, -trichloroethane. These solvents were stored in aboveground storage tanks on Site. The Site's neighbor, Norcom of Tennessee, Inc., found these chemicals in groundwater samples. Subsequent testing at the Site found arsenic contamination in the soil, VOC contamination in groundwater, and soil vapor that exceeded US EPA screening levels. Due to this discovery, the

Tennessee Department of Environment & Conservation ("TDEC") has become involved in potential monitoring and cleanup at the Site. The Plaintiff is the current operator at the Site and has been unjustly required to spend its resources in resolving a problem that the Plaintiff did not create.

## PARTIES

2. P.R. Mallory and Co. Inc. ("Mallory") constructed the facility in 1968 and owned the Site and operated Mallory at the Site from 1968 – 1979. In 1979, Dart Industries purchased the shares of Mallory. Later in 1979, Mallory, then a wholly owned subsidiary of Dart Industries, sold its components division to Emhart Industries, Inc. ("Emhart"). At this time, Mallory conveyed the Site to Emhart and Emhart occupied the Site from 1979 – 1991. In 1980, Dart Industries, Inc. merged with Kraft, Inc. forming Dart & Kraft, Inc. Through a series of additional complex commercial transactions, Kraft Heinz Foods Company LLC ("Kraft") became a successor in liability to Mallory. Also through a series of complex commercial transactions, Stanley Black & Decker, Inc. ("Black & Decker") became a successor in liability to Emhart. Mallory was an Indiana for-profit corporation who is no longer in business. Emhart was a Connecticut for-profit corporation who is no longer in business. Black & Decker is a Connecticut for-profit corporation with its principal office located at 1000 Stanley Dr., New Britain, CT 06053 and can be served through its registered agent at Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203. Kraft is a Pennsylvania limited liability company with a principal office location at Ste. 3400, 1 PPG PL, Pittsburgh, PA 15222 and can be served through its registered agent at C T Corporation System, 300 Montvue Rd., Knoxville, TN 37919. *See* Exhibit 1, Chain of Custody Deeds; *see also* Exhibit 2, Secretary of State Information.

3.      Defendant Emerson Electric Co ("Emerson") purchased the Site in 1991 and occupied and operated at the Site from 1991 - 2005. Emerson is a Missouri for-profit corporation with its principal address at 8000 West Florissant Ave., Saint Louis, MO 63136 and can be served through its registered agent at C T Corporation System, 300 Montvue Rd., Knoxville, TN 37919. *See* Exhibit 1, Chain of Custody Deeds; *see also* Exhibit 2, Secretary of State Information.

4.      Defendants Larry Frasier ("Frasier") and Glenn Birdwell ("Birdwell") purchased the Site in 2005. Frasier is an individual who resides at and can be served at 1309 Baker Mountain Road, Sparta, Tennessee 38583. Birdwell is an individual who resides at and can be served at 900 Baker Mountain Road, Sparta, Tennessee 38583. *See* Exhibit 1, Chain of Custody Deeds.

5.      Defendant Industrial Development Board of White County, Tennessee (the "Board") purchased the Site in 2007. The Board is a nonprofit corporation with a principal address of White County Executive, 1 E Bockman Way RM 205, Sparta, TN 38583 and a can be served through its registered agent at The Industrial Development Board of White County Executive, 1 E Bockman Way RM 205, Sparta, TN 38583. *See* Exhibit 1, Chain of Custody Deeds; *see also* Exhibit 2, Secretary of State Information.

6.      Hillsman Modular Molding, Inc. ("HMMI") entered a lease agreement with the option to purchase (the "Contract") with the Board for the Site and has occupied the Site since 2007 to present day. HMMI is a Florida for-profit corporation with its principal address at 189 Churchill Dr., Sparta, TN 38583. *See* Exhibit 2, Secretary of State Information; *see also* Exhibit 3, the Contract.

**JURISDICTION AND VENUE**

7.      Pursuant to 28 U.S.C. § 1331 and § 1367 this Court has subject matter jurisdiction over actions which arise under CERCLA and supplemental jurisdiction over Plaintiff's remaining

Tennessee state law claims because the claims are so related to the CERCLA claim that this Court has original jurisdiction over that they form part of the same case or controversy.

8. Pursuant to Fed. R. Civ. P. 4 this Court has personal jurisdiction over each Defendant because each Defendant has sufficient contact with Tennessee to exercise personal jurisdiction over the Defendant because the defendant either resides in Tennessee, resided in Tennessee when the cause of action arose, or chose or chooses to conduct business in Tennessee.

9. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b) because a substantial part of the property that is the subject of this action is situated in the Middle District of Tennessee.

**FACTS**

10. When Mallory operated at the Site, it manufactured appliance timers. These operations included electroplating activities, stamping metal parts and dipping the parts in degreasing tanks using trichloroethene and 1, 1, 1-trichloroethane.

11. When Emerson operated at the Site, its operations were largely the same as Mallory; meaning, its operations included electroplating activities, stamping metal parts and dipping the parts in degreasing tanks using trichloroethene and 1, 1, 1-trichloroethane.

12. During the Mallory and Emerson operations at the Site, the chemicals each maintained on site included tetrachloroethene, trichloroethene, 1 1, 1-trichloroethane, diesel fuel, heating oil and isopropanol. The trichloroethene and 1, 1, 1-trichloroethane was stored in a 3,000-gallon aboveground storage tank, diesel fuel was stored in a 5,000-gallon aboveground storage tank, and the heating oil was stored in a 10,000-gallon underground storage tank. Other waste was drummed in 55-gallon drums for pickup.

13. The aboveground tanks were removed in about 2005 when Emerson vacated the Site and the underground heating oil tank was removed in 1987, prior to tank regulations.

14. Mallory was registered as a hazardous waste generator. Mallory primarily generated spent trichloroethene, 1, 1, 1-trichloroethane, isopropanol and metals.

15. Emerson was registered as a hazardous waste generator. Emerson primarily generated spent trichloroethene, 1, 1, 1-trichloroethane, isopropanol and metals.

16. After several inspections, TDEC cited Emerson for improper labeling and paperwork issues. *See* Exhibit 4, Emerson Citation.

17. Considering entering into the Contract, HMMI hired Swift Environmental, Inc. to perform an environmental assessment on the Site (the "Swift Assessment"). The Swift Assessment "has not found any Recognized Environmental Concerns (REC's) associated with the subject property." *See* Exhibit 5, Swift Assessment, executive summary.

18. In January 2007, HMMI entered into the Contract with the Board. The Contract provides HMMI an option to purchase the Site.

19. In 2008, a release of chlorinated solvents was detected in groundwater on the Site's south adjacent property owned and operated by Norcom of Tennessee Inc. ("Norcom"). Specifically, testing found 3.61 ug/L 1,1,-dichloroethane, 18 ug/L cis-1,2-dichloroethene, 99.5 ug/L 1,1-dichloroethene, 1.34 ug/L tetrachloroethene, 5.04 ug/L 1,1,1-trichloroethane and 314 ug/L trichloroethene. In 2010, sampling of the groundwater found: 3.61 ug/L 1,1,- dichloroethane, 18 ug/L cis-1,2-dichloroethene, 99.5 ug/L 1,1-dichloroethene, 1.34 ug/L tetrachloroethene, 5.04 ug/L 1,1,1-trichloroethane and 314 ug/L trichloroethene.

20. The contamination was reported to TDEC, which requested additional sampling and sent letters to the local Tennessee Department of Transportation facility, the Board, Emerson,

Russell's Cleaners, and Federal Mogul. Emerson responded by providing TDEC with several environmental assessments from 1990 and 1991. Exhibit 6, ESC Assessments.

21. Pursuant to TDEC's investigation, the long-term use of trichloroethene and 1, 1, 1-trichloroethane by Mallory and Emerson on the Site and the direction of the groundwater flow, TDEC believed that Mallory or Emerson was the likely source of the release. Norcom and the other people and entities contacted by TDEC in paragraph 20 did and do not use these chemicals in its operations. No additional soil or groundwater investigations have been performed at the site until now. HMMI was never made aware of this contamination.

22. In 2017, HMMI and the Board entered into an amendment to the Contract (the "Contract Amendment") where HMMI agreed to Purchase the site from the Board by paying the remaining indebtedness of the Board on the Site. *See* Exhibit 7, Contract Amendment.

23. In 2019, HMMI considered refinancing the mortgage on the Site in order to take advantage of lower interest rates. HMMI approached First National Bank of Tennessee (the "Bank") in order to refinance.

24. During the refinancing process, in order to protect its investment, the Bank hired Logic Environmental, Inc. ("Logic") to perform a phase 1 environmental assessment ("Logic Phase 1 Assessment"). The Logic Phase 1 Assessment noted the off-site testing from 2008 and 2010 noted in paragraph 19 and stated, "A determination as to whether the site has been impacted by a release from historical solvent use is possible only through soil and groundwater testing." *See* Exhibit 8, Logic Phase 1 Assessment, pg 4.

25. Logic then performed a phase 2 environmental assessment ("Logic Phase 2 Assessment"). The Logic Phase 2 Assessment found several contaminants consistent with the

{D0558819.1}                              6 of 12

Case 2:22-cv-00043    Document 1    Filed 09/12/22    Page 6 of 12 PageID #: 6

prior solvent release and the Mallory and Emerson operations on the Site. HMMI learned of its potential harm from the Logic Phase 2 Assessment. *See* Exhibit 9, Logic Phase 2 Assessment.

26. Logic notified TDEC of the contamination. TDEC has been investigating the Site and HMMI has been required to spend its resources to cooperate in this investigation, including but not limited to, expensive environmental sampling and testing. HMMI will continue to be damaged by a loss in value to its property and additional expenses such as continued environmental sampling and testing, monitoring, and other cleanup costs.

## CAUSES OF ACTION

## COUNT ONE – 42 U.S.C. § 9607 & § 9613

## (ALL DEFENDANTS)

27. The Plaintiff incorporates the other paragraphs in this Complaint as if fully restated herein.

28. The Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") provides in 42 U.S.C. § 9607 that the "necessary costs of response incurred" are recoverable from (a)(1) the "owner and operator" of a facility and (a)(2) "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." CERCLA further provides in 42 U.S.C. § 9613 that "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title."

29. The Site is a CERCLA facility under 42 U.S.C. § 9601.

30. Mallory owned and operated the Site during the time the Site would regularly dispose of hazardous substances as defined in CERCLA under 42 U.S.C. § 9601. Mallory was an owner operator under CERCLA 42 U.S.C. § 9601.

31. Emhart owned and operated the Site during the time the Site would regularly dispose of hazardous substances as defined in CERCLA under 42 U.S.C. § 9601. Emhart was an owner operator under CERCLA 42 U.S.C. § 9601.

32. Emerson owned and operated the Site during the time the Site would regularly dispose of hazardous substances as defined in CERCLA under 42 U.S.C. § 9601. Emerson was an owner operator under CERCLA 42 U.S.C. § 9601.

33. Birdwell owned and operated the Site during the time the Site would dispose of hazardous substances or arrange for disposal of hazardous substances as defined in CERCLA under 42 U.S.C. § 9601. Birdwell was an owner operator under CERCLA 42 U.S.C. § 9601.

34. Frasier owned and operated the Site during the time the Site would dispose of hazardous substances or arrange for disposal of hazardous substances as defined in CERCLA under 42 U.S.C. § 9601. Frasier was an owner operator under CERCLA 42 U.S.C. § 9601.

35. The Board is the current owner of the Site, making the Board an owner operator under CERCLA 42 U.S.C. § 9601.

36. Black & Decker is a successor in interest to Mallory and Emhart and Kraft is a successor in interest to Mallory.

37. A release of hazardous substances, defined in CERCLA under 42 U.S.C. § 9601 and described in Paragraph 19 and the Logic Phase 2 Assessment, occurred while Mallory, Emhart or the Defendants owned and/or operated the Site; therefore, making each Defendant a potentially responsible party under CERCLA.

38. HMMI has been damaged by the release of hazardous substances by having to hire S&Me, Inc. ("S&Me") to conduct testing and sampling at the Site. HMMI will continue to experience additional expenses, including but not limited to additional testing, sampling, monitoring, cleanup and restoration at the Site. The full amount of HMMI's damages is an amount that will be proven at trial.

39. Pursuant to 42 U.S.C. § 9607, § 9613 and the other CERCLA statutes, HMMI is entitled to recoup these damages, interest and attorney fees from the Defendants.

## COUNT TWO – NEGLIGENCE
## (ALL DEFENDANTS)

40. The Plaintiff incorporates the other paragraphs in this Complaint as if fully restated herein.

41. Mallory and Emerson had a duty to the Plaintiff and the public at large to operate the Site in a manner that did not endanger the public through contamination, or destroy the environment through contamination.

42. Mallory, Emhart, Emerson, Frasier, Birdwell and the Board had a duty to the Plaintiff and the public at large to cause the operations at the Site during its ownership of the Site to be performed in a manner that would not endanger the public through contamination, or destroy the environment through contamination.

43. The conduct of the people and entities listed in Paragraph 41 & 42 constitutes a breach of their duty of care by allowing a release of hazardous substances, described in Paragraph 19 and the Logic Phase 2 Assessment.

44. HMMI has been damaged by the release of hazardous substances by the loss in value to the Site and having to hire S&Me to conduct testing and sampling at the Site. HMMI will

continue to experience additional expenses, including but not limited to additional testing, sampling, monitoring, cleanup and restoration at the Site. The full amount of HMMI's damages is an amount that will be proven at trial.

45. The breach of the people and entities listed in Paragraph 41 & 42 is the cause in fact and proximate cause of HMMI's damages because HMMI would not have experienced the expenses and loss in value of the Site if it was not for the breach described.

46. Defendant Black & Decker is a successor in liability for Mallory and Emhart, and Kraft is a successor in liability for Mallory.

## COUNT THREE – NEGLIGENT MISREPRESENTATION
### (INDUSTRIAL DEVELOPMENT BOARD OF WHITE COUNTY, TENNESSEE)

47. The Plaintiff incorporates the other paragraphs in this Complaint as if fully restated herein.

48. HMMI and the Board entered into the Contract which is a lease agreement with the option to purchase the Site in 2007.

49. In 2008, TDEC reached out to the Board regarding the chlorinated solvents found on the neighboring Norcom property.

50. At this time, TDEC's investigation concluded that the release of the chlorinated solvents came from the Site.

51. In 2017, HMMI and the Board entered into the Contract Amendment where HMMI exercised its option to purchase the Site.

52. During the Contract Amendment negotiations, the Board supplied information to HMMI.

53. The information supplied by the Board was false because the Board omitted the fact that the Site was contaminated, was responsible for contaminating neighboring properties, and that

the owner would incur costs in the cleanup of the Site. The Board's omission left HMMI to believe that it was purchasing a property that was not contaminated, was not responsible for contaminating neighboring properties and that HMMI would not incur cleanup costs.

54. The Board did not exercise reasonable care when communicating with HMMI about the Contract Amendment. A reasonable party would provide to a potential real estate purchaser the potential environmental issues on the property.

55. HMMI was justified in relying on the Board's assertions because HMMI had no knowledge of any environmental issue on the Site. At this time, HMMI was under the belief that the Swift Assessment prior to entering into the Contract was accurate.

56. HMMI has been damaged by the negligent misrepresentation by the Board because HMMI has stayed on the Site and purchased the Site. HMMI is damaged by the loss in value to the Site between a noncontaminated site and the actual Site. HMMI has had to hire S&Me to conduct testing and sampling at the Site. HMMI will continue to experience additional expenses, including but not limited to additional testing, sampling, monitoring, cleanup and restoration at the Site. The full amount of HMMI's damages is an amount that will be proven at trial.

**WHEREFORE**, Plaintiff Hillsman Modular Molding, Inc. prays for the following relief:

1. That the Court find in favor of Plaintiff that pursuant to 42 U.S.C. § 9607 the Plaintiff is entitled to recoup its costs from the Defendants, including interest and attorney fees;
2. That the Court find the Defendants were negligent and the Plaintiff is entitled to damages;
3. That the Court find that the Industrial Development Board of White County, Tennessee made a negligent misrepresentation and the Plaintiff is entitled to its damages;
4. That the Court grant the Plaintiff the costs of this action; and

5. For such other general relief the Court believes is reasonable and just.

Respectfully submitted,

Dated: September 12, 2022

*/s/ Sam Blink*
Sam Blink, #36400
Darrow Everett LLP
424 Church St., Suite 2000
Nashville, TN 37219
Phone: (615) 651-7386
sblink@darroweverett.com